**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ADAM ELLICSON,

Plaintiff,

v.

ODEN MACHINARY, INC., and
JEFF MANTYK,

Defendants.

Case No. 1:22-cv-2113

## COMPLAINT

Plaintiff, Adam Ellicson, by and through his attorney, Daniel S. Gajda of Maduff & Maduff, LLC, respectfully complains of Defendants Oden Machinery, Inc., and Jeff Manytk for tortious interference with prospective economic advantage, and in support, states as follows:

## INTRODUCTION

1.      Plaintiff, Adam Ellicson began working for Defendant Oden Machinery as a salesperson in October of 2020, covering the Eastern Sales Territory (generally the U.S. States of the Eastern Seaboard and portions of Eastern Canada and Mexico.)  As part of his employment, he was required to sign a non-compete agreement which prohibited him from soliciting clients for a competitor, but which was specifically limited to his "assigned territory."  In any event, with one exception, Plaintiff did not deal with any clients outside of his assigned territory.

2.      Plaintiff left his position with Defendant Oden Machinery on or about March 1, 2022 for a much more lucrative opportunity to work with a company called NJM which sold a higher class of the same equipment but was to be placed in the Midwest Territory.  None of the

states from his assigned territory with Oden overlapped with any of the states he planned to work for NJM.

3.      Nonetheless, on or about March 15, 2022, Defendant Oden, by and through its agent, Defendant Mantyk, sent Plaintiff and NJM a letter demanding that he not take the position and stating that Plaintiff could not work for NJM *nationwide*, as well as making other false statements.  NJM withdrew the offer.  Even when Plaintiff showed NJM that the non-compete agreement was limited, NJM was unwilling to reextend the offer of employment because it was concerned that Oden might still file suit and told Plaintiff that he needed to resolve the issue with Oden.

4.      Plaintiff attempted to resolve the matter with Oden, but, while acknowledging that the agreement was limited to his "assigned territory" Oden persisted in its position.   Oden did complain that there were customers outside the assigned territory with whom Plaintiff had worked while at Oden and Plaintiff agreed to exclude himself from dealing with any such customer – he just needed for Oden to identify those customers because he was unaware of any.  Oden refused stating that Plaintiff would not be taking a position with NJM.

5.      This case for tortious interference with prospective economic advantage follows.

## THE PARTIES

6.      Plaintiff, Adam Ellicson, is currently a resident of Lake County, IL, and performed all functions for Defendant while residing in Illinois, and received all communications, including the March 15, 2022, letter, from Defendant in Illinois.

7.      Defendant, Oden Machinery, Inc., (hereinafter "Oden") provides equipment for packaging liquid products, with its principal place of business in Erie County, New York, and is a subsidiary of Amet Packaging, Inc., which is located in Mason County, Michigan.

8.     Defendant Jeff Mantyk (hereinafter "Mantyk"), upon information and belief, is the Chief Financial Officer of Amet Packaging, Inc. and Oden Machinery, Inc., and is currently a resident of Mason County, Michigan.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the present action pursuant to 28 U.S.C. 1332 because the matter in controversy exceeds $75,000 and the parties are citizens of different states.

10.     Venue is proper in this forum pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in Illinois.  Defendant is a resident of Illinois and signed his contract with Defendant in Illinois.  He performed all functions for Defendant while residing in Illinois and signed his contract with NJM in Illinois.  Defendant sent Plaintiff the March 15 letter in Illinois causing Plaintiff to have the job offer rescinded by NJM. All negotiations and communications with Defendant and NJM occurred and continue to occur in Illinois.  All discussions between Plaintiff and Defendants in this action took place by Plaintiff and/or his counsel from Illinois.

## FACTS

The Non-Compete, Non-Solicitation Agreement

11.     Plaintiff signed his offer letter with Defendant Oden on October 20, 2020, that specified Plaintiff's sales territory as the following states on the east coast: ME, VT, NH, MA, MD, CT, RI, NY, PA, NJ, DE, VA, and WV.

12.     Plaintiff then signed a non-compete, non-solicitation agreement with Defendant Oden on October 27, 2020, that states, among other things:

> "The covenants set forth in Paragraph 3.4 shall **only apply** within those territories which Employee has been assigned by the Company during all or any part of the twelve (12) months prior to the termination of the Employee's employment with the company".

Section 3.4 of the Non-Compete, Non-Solicitation Agreement.

13.     Plaintiff's assigned territory for his prospective employer, NJM Packaging, would have been limited to the following states in the Midwest: MN, WI, IL, MO, IN, MI, OH, KY, and KS.

14.     None of the assigned states from NJM overlap with any of the states Plaintiff was assigned during his employment with Defendant, meaning that Plaintiff could not violate the terms of the agreement he signed with Defendant by his employment with NJM.

15.     Section 3.3 of the agreement also prohibits Plaintiff from soliciting company clients, which he would not be doing, and therefore would not be in violation of the agreement since his clients were all located in the east coast states he worked at while with Defendant.

16.     Plaintiff has not and does not intend to solicit any of his former customers or employees of Defendant's since his departure and is not in any violation of the agreement.

17.     To the extent Plaintiff has asked Defendant to identify any of his former customers who operate in the states he would be working in if he is employed by NJM, Defendant has refused to share that information with Plaintiff citing undefined confidentiality concerns.

18.     Plaintiff has never been in violation of the agreement, nor would he be in violation if NJM had decided to hire him because of the different states comprising his respective territories between Defendant and NJM, and because he has not and will not solicit his former customers.

<u>Defendants Send a "Violation of Non-Compete and Confidential Information
Agreement" Letter to Plaintiff and NJM and NJM Rescinds Employment Offer</u>

19.     Nevertheless, on March 15, 2022, Defendants sent a certified letter, signed by Defendant Mantyk to Plaintiff and to parties at NJM, including NJM President and CEO, Michel Lapierre, and NJM Vice President, Tom McDaniel, accusing Plaintiff of violating the agreement, stating, *inter alia* "we direct your attention to Section 3.4 in which you agreed not to compete **…on a nationwide** basis…."

20.     Defendants also sent this letter to Plaintiff in Lake County, Illinois.

21.     This is in direct contradiction to the limitations of Paragraph 3.4.

22.     Plaintiff, through counsel, spoke to NJM and carefully explained how this statement was inconsistent with the non-compete agreement and asked NJM not to withdraw the offer.

23.     NJM was clear that while the fact that the letter was inconsistent with the agreement might well result in Plaintiff prevailing in any litigation, NJM was not willing to hire Plaintiff because Defendant Oden was threatening litigation and NJM wanted no part of it.

24.     NJM further stated that if Plaintiff could resolve the issue with Defendant Oden, that NJM would still hire him.

25.     However, NJM could not wait to restart its recruitment process for the position.

<u>Plaintiffs Attempts to Address and Resolve Defendant's Issues with the Agreement</u>

26.     Plaintiff, hoping to address this matter so that he could work for NJM, sent his own response letter to Defendants on March 25, 2022, analyzing the agreement and denying any violation.

27.     Plaintiff then requested that Defendants communicate this fact to NJM so that he could move forward with his employment with NJM, but Defendants refused.

28.     On March 26, 2022, Plaintiff through his counsel had a conversation with Defendants including not just Defendant Mantyk, but CEO Ron Sarto and President Tony Swedersky.

29.     During that conversation, Plaintiff's counsel carefully explained that there was no threatened violation of paragraph 3.4 because the territories were different.

30.     Plaintiff's counsel also explained that given that Mr. Ellicson did not know any of Defendant Oden's customers outside of those states (and indeed in many of those states) that Defendant Oden had no protectible interest.

31.     Plaintiff's counsel requested a joint letter (from Oden and Plaintiff) to NJM reassuring them that Defendants would not take action given that the territories did not overlap.

32.     This letter would have mitigated the problem and NJM would have hired Plaintiff.

33.     On behalf of Defendant Oden, Ron Sarto stated that in fact Plaintiff had sold to customers outside of the assigned states.

34.     While the non-compete agreement is clear that it only covers the assigned states, Plaintiff's counsel explained that Plaintiff did not agree with that statement, but that if Defendant Oden would provide a list of those specific customers about which it was concerned, that Plaintiff would specifically avoid those clients.

35.     Ron Sarto refused stating that he did not want to provide information about Oden's customers to Plaintiff.

36.     When Plaintiff's counsel noted that the whole reason that Ron Sarto was claiming that there was a protectible interest in these customers was that Plaintiff knew them and that therefore there should be no concern that Oden was giving Plaintiff any information it believed that he did not have.

37.     Ron Sarto's response was "Adam is not going to work for NJM."

38.     Indeed, it was an emphatic statement that made clear that there was no room for discussion irrespective of the words of the non-compete agreement.

39.     This meant that it did not matter to Defendant whether Plaintiff was actually in violation of the non-compete agreement, Defendant's purpose was to prevent Plaintiff from obtaining employment with NJM by any means necessary.

40.     Nonetheless, Defendant Mantyk requested that Plaintiff's counsel put his concerns in writing.

41.     Immediately after that call Plaintiff's counsel sent Mr. Mantyk an email specifically setting forth what had been discussed in the conversation including:

> As we discussed, the relevant section of the non-compete agreement is 3.4 which specifically states that "The covenants set forth in Paragraph 3.4 shall only apply within those territories which Employee has been assigned by the Company during all or any part of the twelve (12) months prior to the termination of the employee's employment."  Unfortunately, the letter you sent to Adam and to NJM states that Adam "agreed not to compete with Ahmet [sic] Packaging, Inc., ... *on a nationwide basis...*"

42.     The email also specifically informed Mr. Mantyk that "This interferes with the rights of both NJM and Adam Ellicson."


Oden's Cease and Desist Letter

43.     Oden did not respond until April 7, 2022, when its counsel sent a litigation hold letter to Plaintiff's counsel informing him that Plaintiff was in violation of the agreement and stating that "Subject to Rule 408, we welcome your client to make a written offer, including geographic and monetary terms, to resolve this matter.  If this matter is not amicably resolved forthwith, litigation will ensue."

44. Plaintiff's counsel immediately called Oden's counsel (who had written the letter) and was told that he would have to talk to a different lawyer in the office.

45. Emails were exchanged between April 16 and 19 before a call was finally had with the second attorney.

46. Plaintiff's counsel once again explained that Mr. Ellicson was not competing and was not in violation of the agreement, but that this had to be resolved quickly because Defendants' false statements were causing him to be denied a job which could earn him $250,000 per year.

47. Per her request, Plaintiff's counsel followed that letter with an additional email to her stating:

> Thank you for taking the time to talk to me this afternoon. In our conversation, I explained to you that because Oden sent a letter to NJM falsely stating that he could not compete with Ahmet [sic] "on a nationwide basis," despite my explanation to NJM that section 3.4 of the non-compete agreement states that it is limited to the territory to which Mr. Ellicson was assigned (which was the East Coast), NJM was not satisfied and withdrew the offer. The NJM offer was to cover the Midwest states, none of which overlapped with his assigned territory at Oden.

48. The email then set forth the different states (and Canadian territories) demonstrating that there was no overlap and imploring her to work with him to "save Mr. Ellicson's job."

49. No response was made.

## DEMAND FOR RELIEF- TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST ALL DEFENDANTS

50. Plaintiff restates and realleges paragraphs 1 through 49 as paragraph 50 of this Complaint.

51. Plaintiff accepted a job offer from NJM on March 1, 2022, with a tentative start date of March 21, 2022.

52      Defendants were aware that Plaintiff had accepted a position with NJM and caused a letter to be sent to Plaintiff and NJM falsely and inaccurately accusing Plaintiff of violating the non-compete, non-solicitation agreement and federal law, and threatening potential litigation involving NJM's employment of Plaintiff.

53. Defendants' intentions were to prevent Plaintiff from obtaining employment with NJM.

54.     As a result of Defendants' interference, NJM rescinded its job offer to Plaintiff and prevented Plaintiff from beginning his employment with NJM.

55.     Plaintiff has suffered and continues to suffer significant damages of both a pecuniary and non-pecuniary nature since Defendant's unjustified intervention with Plaintiff's legitimate employment relationship with NJM.

56.     Defendant' actions in this regard were willful and malicious warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff, Adam Ellicson, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants Oden Machinery, Inc. and Jeff Mantyk, jointly and severally for lost wages including backpay, front-pay, and compensatory damages, and against Defendants Oden Machinery, Inc, and Jeff Mantyk individually for punitive damages, and for such other and further relief this Court deems just and equitable.

### Plaintiff Demands a Trial by Jury for all Issues which May So Be Tried

Respectfully submitted,

by: /s Daniel S. Gajda
Plaintiff's Attorney

Daniel S. Gajda
Attorney No. 6328491
Maduff & Maduff, LLC
312-276-9000
dsgajda@madufflaw.com