**22cvIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADAM ELLICSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-02113 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ODEN MACHINERY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant Jeff Mantyk's motion to dismiss [5] is granted and Defendant Oden Machinery, Inc.'s motion to dismiss [8] is denied. Plaintiff's claim against Defendant Mantyk is dismissed without prejudice to Plaintiff seeking leave to file an amended complaint that states a viable claim against that Defendant, if Plaintiff is able to do so consistent with the requirements of Fed. R. Civ. P. 11. See the accompanying Statement for details.

## STATEMENT

Plaintiff Adam Ellicson is a former salesperson for Defendant Oden Machinery, Inc. ("Oden"). After Ellicson accepted a more lucrative opportunity with a competitor of Oden, Oden sent a letter to both Ellicson and his prospective employer informing them that Ellicson had agreed not to compete with Oden and it intended to enforce that agreement. Faced with Oden's threat, the competitor withdrew its employment offer to Ellicson. According to Ellicson, Oden misrepresented the terms of their noncompete agreement and, for that reason, he brought the present action asserting a single Illinois common-law claim for tortious interference with prospective economic advantage against Oden and Defendant Jeff Mantyk. Now, Oden and Mantyk each seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 5, 8.) For the reasons that follow, Oden's motion is denied but Mantyk's motion is granted.

### I.

For the purposes of the motions to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Ellicson as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

Ellicson began working as a salesperson for Oden in October 2020. (Compl. ¶¶ 1, 11, Dkt. No. 1.) In connection with his employment, Ellicson signed a noncompete agreement, which was limited in scope to only "those territories which [Ellicson] has been assigned by [Oden] during all or any part of the twelve (12) months prior to the termination of [his] employment." (*Id.* ¶¶ 1, 12.)

During his employment at Oden, Ellicson was assigned the Eastern Sales Territory, which covered several eastern seaboard states in the United States, as well as portions of eastern Canada, and all of Mexico. (*Id.* ¶ 1, 11.)

On March 1, 2022, Ellicson left Oden to take a higher-paying position with NJM Packaging ("NJM"), a company that sold similar equipment as Oden. (*Id.* ¶ 2.) At NJM, Ellicson would be assigned to cover the Midwest Territory, and none of his assigned states would overlap with his assigned territories at Oden. (*Id.* ¶¶ 2, 13–14.) Yet, on March 15, 2022, Oden sent a letter to both Ellicson and NJM claiming that Ellicson's employment with NJM violated the noncompete agreement he had signed with Oden. (*Id.* ¶¶ 3, 19.) The letter attached the noncompete agreement and directed Ellicson and NJM's "attention to Section 3.4 in which [Ellicson] agreed not to compete on a nationwide basis." (Compl. ¶ 19; Oden's Mot. to Dismiss Ex. B, Oden's Letter to Ellicson and NJM, Dkt. No. 8-3.)[1] Jeff Mantyk, Oden's Chief Financial Officer, signed the letter on behalf of Oden. (*Id.* ¶¶ 3, 8, 19.)

While Ellicson tried to explain to NJM that Oden's claim of a nationwide noncompete agreement was inconsistent with the agreement's actual language, NJM, wary of potential litigation, told Ellicson it would withdraw its employment offer unless he resolved the issue with Oden. (Compl. ¶¶ 22–24.) In the meantime, NJM reopened the recruitment process for the position meant for Ellicson. (*Id.* ¶ 25.) In an effort to salvage his NJM offer, Ellicson sent a letter to Oden in which he explained why his employment with NJM would not violate the terms of his noncompete agreement. (*Id.* ¶ 26.) On March 26, 2022, Ellicson's attorney spoke with Oden executives, including Mantyk, and explained that his assigned territories at NJM would be different from his assigned territories at Oden. (*Id.* ¶¶ 28–29.) Accordingly, the attorney asked Oden to send a letter to NJM stating that it would not take action if NJM hired Ellicson as planned. (*Id.* ¶ 31.)

Oden was unconvinced by Ellicson's understanding of the noncompete agreement and its Chief Executive Officer ("CEO") further maintained that the agreement applied to Ellicson's prospective employment with NJM because, while at Oden, Ellicson had sold to customers outside of his assigned territories. (*Id.* ¶ 33.) To resolve this concern, Ellicson's attorney offered that if Oden provided a specific list of customers about which it was concerned, Ellicson would avoid those customers while at NJM. (*Id.* ¶ 34.) The CEO declined to provide such a list. (*Id.* ¶ 35.) At the end of Oden's meeting with Ellicson's attorney, the CEO emphatically stated that Ellicson "is not going to work for NJM." (*Id.* ¶¶ 37–38.) Ultimately, Oden refused to back down from its position and NJM withdrew its job offer to Ellicson. (*Id.* ¶ 54.) As a result of the loss of his employment opportunity with NJM, Ellicson brought the present action asserting a single Illinois state-law claim for tortious interference with prospective economic advantage against both Oden and Mantyk.

---

[1] Although Ellicson did not attach to his complaint the actual letter Oden sent to him and NJM, Oden has submitted both the letter and the noncompete agreement as exhibits to its motion to dismiss. Those exhibits are properly treated as incorporated into Ellicson's complaint by reference, as they are referred to in the complaint and central to his claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Oden and Mantyk each have filed a motion to dismiss. In its motion, Oden argues that its letter cannot be grounds for Ellicson's tortious interference claim because the letter was a privileged assertion of Oden's legal rights under the noncompete agreement. Mantyk's motion joins and adopts the privilege claim made in Oden's motion to dismiss and moreover, to the extent Oden's motion is denied, contends that he cannot be held personally liable for acts performed solely on behalf of Oden. The Court begins with Oden's claim for dismissal and will then turn to Mantyk's motion if necessary.

## A.

In Illinois, to state a claim for tortious interference with prospective economic advantage, a plaintiff must plead: "1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference." *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170–71 (7th Cir. 1993). Because a tortious interference claim "implies a balancing of societal values," an individual "may be privileged to interfere, depending on his purpose and methods, when the interference takes a socially sanctioned form." *Miller v. Lockport Realty Grp., Inc.*, 878 N.E.2d 171, 176 (Ill. App. Ct. 2007). For a defendant's statement to be privileged from an interference claim, the defendant must have "acted in good faith to protect an interest or uphold a duty." *Delloma*, 996 F.2d at 171. Moreover, "the defendant's statement must be limited in scope to that purpose, and must be made on a proper occasion, in a proper manner and to proper parties only." *Id.*

Here, Oden contends that its alleged interference was privileged because it was merely asserting its rights under the noncompete agreement. Further, Oden notes that its letter was sent only to the relevant parties—Ellicson and NJM—was limited to the purpose of enforcing Oden's noncompete agreement and was made sufficiently in advance of Ellicson's proposed start date at NJM. Based on Ellicson's allegations, the Court agrees that Oden has a strong claim of privilege. Indeed, courts have found that "a statement made to enforce a noncompetition agreement" may qualify for the privilege. *Buckley v. Peak6 Invs., LP*, 827 F. Supp. 2d 846, 853 (N.D. Ill. 2011); *see also Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*, No. 07 C 5902, 2010 WL 1172565, at *4 (N.D. Ill. Mar. 22, 2010) ("[A] party acting to enforce a non-compete clause is acting to protect an interest."). And Oden's letter was properly tailored in scope and timely sent to only the necessary recipients.

The inquiry does not end there, however. Rather, Ellicson can overcome the claim of privilege by showing that Oden's conduct was "malicious," meaning "intentional[] and without justification." *Delloma*, 996 F.2d at 171. Put differently, malice "requires a showing of impropriety." *Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 556 (N.D. Ill. 2022). Ellicson claims that malice is present here because Oden misrepresented the noncompete agreement as having nationwide scope when, by its express terms, it was limited only to Ellicson's assigned territories. In response, Oden notes that it attached a copy of the noncompete agreement to the letter, so NJM was aware of the agreement's exact language. And Oden argues that its interpretation of the agreement's scope is not the type of readily falsifiable statement that can establish malice.

At this stage of the case, however, the Court cannot conclude that Oden's statement setting forth its understanding of the scope of the noncompete agreement was not malicious. It is true that opinions of contract interpretation ordinarily are insufficient to establish a tortious interference claim. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*, No. 08 CV 6584, 2010 WL 3000178, at *6 (N.D. Ill. July 28, 2010) ("[B]ased on the court's above finding that [the defendant's] representations were not false statements of fact but rather opinions of contract interpretation, [the plaintiff's] tortious interference with a prospective business advantage claim . . . fails."). And the Court also appreciates the "need[s] to tread lightly when policing the truth or falsity of statements made during a competitive process." *Brinley*, 580 F. Supp. 3d at 558. Nonetheless, considering that Oden included a copy of the noncompete agreement in its letter, implicit in Oden's statement that the noncompete agreement had a nationwide scope is a factual contention that Ellicson's assigned territories covered the entire nation. According to the complaint, that contention is an outright falsehood. On the other hand, "assigned territories" is not a defined term in the noncompete agreement. Thus, "assigned territories" might be plausibly construed broadly to encompass any state where Ellicson made sales, even if the state was not one of the states specifically assigned to him. It is also possible that Oden knowingly advanced a frivolous interpretation of the agreement for the purpose of thwarting Ellicson's prospects with NJM.

Ultimately, the issue of malice entails a factual inquiry that cannot be undertaken at the motion to dismiss stage.[2] *See Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 431 (Ill. App. Ct. 1998) ("In Illinois, the issue of whether a qualified privilege exists has been a question of law for the court, and the issue of whether the privilege was abused has been a question of fact for the jury."). For that reason, Oden's motion to dismiss is denied.

**B.**

The Court next turns to Manytk's motion. Mantyk claims that his acts were privileged because he acted solely as an agent of Oden. "Illinois grants a qualified privilege to corporate officers protecting them from liability for decisions made on behalf of the company." *3Com Corp.*

---

[2] In its response brief, Ellicson submits exhibits outside the pleadings and requests that the Court rule against Oden's privilege assertion as a matter of law by converting Oden's motion to dismiss to one for summary judgment pursuant to Rule 12(d). Even if the Court were inclined to convert Oden's motion, none of Ellicson's exhibits demonstrate the absence of a dispute of fact regarding whether Oden honestly believed its representation as to the scope of the noncompete agreement.

*v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 938 (N.D. Ill. 2000). Again, a plaintiff can overcome the privilege by showing malice. *Id.* To show malice on the part of a corporate agent, the plaintiff must allege that the agent "acted to further his own personal goals or to injure plaintiff[], and that [the agent's] actions were contrary to the interests of the [corporation]." *Id.*

As alleged in the complaint, Mantyk wrote the letter in his capacity as Oden's Chief Financial Officer and on behalf of Oden in furtherance of its interest in enforcing the noncompete agreement. (Compl. ¶¶ 3, 8, 19.) There is nothing in the complaint plausibly suggesting that Mantyk acted for purely personal reasons or that his actions were antagonistic to Oden's interests. Thus, the Court finds that the privilege protects Mantyk from liability. For that reason, the claim against Mantyk is dismissed.

## III.

For the foregoing reasons, Oden's motion to dismiss (Dkt. No. 8) is denied and Mantyk's motion to dismiss (Dkt. No. 5) is granted. Ellicson's claim against Mantyk is dismissed without prejudice to Ellicson seeking leave to file an amended complaint that states a viable claim against Mantyk, if Ellicson is able to do so consistent with the requirements of Federal Rule of Civil Procedure 11.

Dated: June 26, 2023

_____
Andrea R. Wood
United States District Judge

5