IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM ELLICSON, | |
| Plaintiff, | Case No. 22 cv 02113 |
| v. | Honorable Sunil R. Harjani |
| ODEN MACHINERY, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

After Adam Ellicson notified his former employer, Oden Machinery, Inc., that he was taking a position at a different company, Oden sent a letter to Ellicson and the prospective employer, NJM Packaging, explaining that Ellicson was subject to a non-competition agreement that prohibited him from working for a competitor on a "nationwide" basis. Oden also attached a copy of the non-competition agreement. NJM did not move forward with hiring Ellicson, and after Ellicson and Oden were unsuccessful in negotiating a resolution, Ellicson ultimately took a job at another company. Amidst his negotiations with Oden, Ellicson also filed this lawsuit. Ellicson maintains that Oden tortiously interfered with his prospective employment at NJM by misrepresenting the scope of his non-competition agreement in the letter. Because Oden's communication was privileged under Illinois law and Ellicson has failed to raise a genuine dispute of material fact that Oden abused the privilege, Oden's motion for summary judgment [111] is granted.

**Background**

Before outlining the undisputed facts in this case, the Court first addresses Ellicson's failure to comply with the local rules when responding to Oden's Rule 56.1 statement of facts. Local Rule 56.1(e)(3) requires a party to cite specific evidentiary material when disputing an asserted fact and cautions that "[a]sserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." This Court's standing order for summary judgment also highlights this rule. Here, each time Ellicson disputed one of Oden's facts, he failed to cite any record evidence that controverts the fact. The Court exercises its discretion to strictly enforce the local rules. *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions."). Thus, where the record supports Oden's asserted facts and Ellicson failed to cite record evidence in opposition, the Court deems those facts admitted over Ellicson's purported dispute. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817–18 (7th Cir. 2004) (concluding district court did not abuse its discretion in striking responses that fail to cite record evidence).

In addition, Oden has filed a motion to strike three declarations that Ellicson uses to support his Rule 56.1 statement of additional facts. Plaintiff has offered two of his own declarations as well as a declaration from his attorney, Aaron Maduff. Federal Rule of Civil Procedure 56 allows parties to use an affidavit or declaration to oppose a motion for summary judgment if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Oden argues that the declarations contain inadmissible hearsay, impermissible legal conclusions, and statements that are conclusory, speculative, and lacking basis in the declarant's personal knowledge. The Court has carefully reviewed Ellicson's Rule 56.1 statement and the supporting declarations and finds that many of the assertions are not relevant in resolving Oden's summary judgment motion. Thus, the Court does not address every paragraph to which Oden objects. There is only one fact from Ellicson's Rule 56.1 statement on which the Court relies that is implicated by the motion to strike (paragraph 15 of Ellicson's Rule 56.1 statement). That fact is further addressed in the Court's analysis below.

Finally, the Court also notes that neither Ellicson nor Oden cited specific facts from their Rule 56.1 statements in their memoranda of law. Instead, the parties incorporated by reference the entirety of their respective statements of fact at the beginning of each of their briefs. Although this method is less than helpful, the Court has reviewed the entirety of each party's statement of fact to identify the particular facts that support the parties' arguments and whether there are any disputes of material fact.

## Statement of Facts

Having addressed the threshold issues, the Court now turns to the undisputed facts. The Court construes the evidence in the summary judgment record and draws all reasonable inferences in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Unless otherwise noted, the following facts are undisputed or deemed admitted in accordance with the explanation above.[1]

Oden hired Ellicson as a Regional Sales Manager in October 2020, where he was assigned to the Eastern Sales Territory. PRDSOF ¶¶ 8, 9. At all relevant times, Oden maintained a nationwide sales presence. *Id.* ¶ 11. Upon his hiring, Ellicson executed a Confidentiality, Non-Competition, and Non-Solicitation Agreement (the Agreement). *Id.* ¶ 10. Section 3.4 of the Agreement is titled "Limited Non-Competition" and states:

> Employee agrees that during Employee's employment with the Company and for a period of twelve (12) months following the termination of Employee's employment for any reason, Employee shall not, directly or indirectly: (i) compete or plan to compete, in whole or in part, with the Company; (ii) participate in the ownership, management, financing or control of, whether or not for consideration, any person or entity that competes or plans to compete, in whole or in part, with the Company; (iii) act in the same or similar capacity that the Employee acted in for the Company, whether or not for consideration, for any person or entity that competes or plans to

---

[1] The Court cites to Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF" and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF."

>compete, in whole or in part, with the Company; (iv) perform the same or similar functions that the Employee performed for the Company, whether or not for consideration, for any person or entity that competes or plans to compete, in whole or in part, with the Company; or (v) take, facilitate, or encourage any action the purpose or effect of which is to evade the intent of this subsection. The covenants set forth in Paragraph 3.4 shall only apply within those territories which Employee has been assigned by the Company during all or any part of the twelve (12) months prior to the termination of the Employee's employment with the Company. [113-5] at 2.

In January and February 2022, Ellicson had at least three interviews with the NJM sales and executive teams, including with Mark LaRoche, the Vice President of Sales for NJM. PRDSOF ¶¶ 3, 20.

Sometime around March 1, 2022, NJM offered Ellicson the position of regional sales manager for NJM's Midwestern Sales Territory. *Id.* ¶ 21. On or about March 8, 2022, Ellicson tendered his resignation to Oden. *Id.* ¶ 22. Around that time, Ellicson also notified Tony Swedersky, Ellicson's superior and the President of Oden, that he intended to work in a sales position with NJM. *Id.* ¶¶ 5, 22. However, Oden and its parent company, Amet Packaging, Inc., considered NJM to be a competitor. *Id.* ¶ 26. Both companies produced liquid filling and packaging equipment, sold liquid filling and packaging lines, and sold products to the same customer base. *Id.* ¶¶ 27, 28.

On March 15, 2022, Oden delivered a letter to Ellicson and certain NJM and PROMACH (NJM's parent company) executives. *Id.* ¶ 29. The Letter included a copy of the Agreement. *Id.* The crux of this dispute centers on the following language from the Letter:

>We write the remind you of your continuing obligations contained in the enclosed Confidentiality, Non-Competition, and Non-Solicitation Agreement ("Agreement") you signed with Amet Packaging, Inc. as of October 27, 2020.

>Specifically, we direct your attention to Section 3.4 in which you agreed not to compete with Amet Packaging, Inc. and its subsidiaries, including Change Parts, Inc., E-PAK Machinery, Inc., and Oden Machinery, Inc. (collectively, the Company) on a nationwide basis for a period of twelve (12) months from the end of your employment by Company. Specifically, you are prohibited from engaging, through employment or otherwise, with any business that is a competitor of the Company. [113-3] at 1.

Thereafter, Ellicson's hiring process with NJM did not move forward. Following receipt of the Letter, NJM was still interested in hiring Ellicson if he could obtain some release from the Agreement's restrictions. PRDSOF ¶ 35. Ellicson, Oden, and Ellicson's attorney, Aaron Maduff, engaged in negotiations to come to a resolution.[2] The parties did not reach an understanding, and

---

[2] While the parties do not dispute that conversations took place, the parties heavily dispute the characterization of each side's facts related to the negotiations as well as the admissibility of the underlying evidence. To the extent a disputed fact is relevant to the Court's analysis, it is discussed below.

3

Ellicson filed his Complaint in this case. *Id.* ¶ 38. Ellicson ultimately took a position at a different company in June 2022. *Id.* ¶ 50. In August 2023, Ellicson ultimately went to work for NJM as a Regional Sales Manager. *Id.* ¶ 51.

**Discussion**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249.

Ellicson argues that Oden tortiously interfered with his prospective employment with NJM by sending the Letter. Under Illinois law, a plaintiff must prove the following four elements to establish a claim for tortious interference with prospective economic advantage: "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E.2d 870, 878 (1991); *see also Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (same).

However, Illinois law recognizes a qualified privilege for claims for tortious interference. "[A] defendant's statement is privileged from a claim for tortious interference 'if the defendant acted in good faith to protect an interest or uphold a duty.'" *Buckley v. Peak6 Invs., LP*, 827 F. Supp. 2d 846, 853 (N.D. Ill. 2011) (quoting *Delloma v. Consolidation Coal Co.,* 996 F.2d 168, 171 (7th Cir. 1993). The statement "must be limited in scope to that purpose, and must be made on a proper occasion, in a proper manner and to proper parties only." *Delloma*, 996 F.2d at 171. The defendant bears the burden of demonstrating it is entitled to the privilege. *See Microsoft Corp. v. Logical Choice Computers, Inc.*, 2001 WL 58950, at *14 (N.D. Ill. Jan. 22, 2001). Courts have found that a statement made to enforce a non-competition agreement qualifies for such privilege. *See Del Monte Fresh Produce, Inc. v. Kinnavy*, 2010 WL 1172565, at *4 (N.D. Ill. Mar. 22, 2010) ("[A] party acting to enforce a non-compete clause is acting to protect an interest.").

Here, Oden has established that its communication in the form of the Letter is entitled to a qualified privilege. The undisputed facts demonstrate that after learning that Ellicson had accepted employment with a company that Oden considered to be a competitor, Oden sent the Letter to assert and protect its rights pursuant to Agreement. The Letter itself is two pages long and discusses Ellicson's non-competition and confidentiality obligations under the Agreement. The Letter was delivered to Ellicson and certain NJM and PROMACH executives, along with a copy of the Agreement itself. These facts demonstrate that Oden's actions were made in the proper manner, to the proper parties, at the appropriate time. *See Buckley*, 827 F. Supp. 2d at 853 (finding comments made by former employer to prospective employer regarding a non-competition agreement qualify for the privilege); *see also Disher v. Fulgoni*, 161 Ill. App. 3d 1, 24, 514 N.E.2d 767, 781 (1987) (finding no tortious interference based on letter sent to plaintiff's prospective

employer advising that plaintiff possessed confidential information subject to a confidentiality agreement). Ellicson argues that the Letter was not limited in scope to protect a legitimate interest because it asserted that he could not work for a competitor in any capacity *nationwide*, which, according to Ellicson, is beyond the scope of the plain language of the Agreement. The problem with this argument is that neither party disputes that Oden had legitimate rights pursuant to the Agreement, and the contents of the Letter are limited to discussing the non-competition and confidentiality aspects of the Agreement. Thus, the Letter is limited in scope as it relates to Oden's interest under the Agreement, which is the relevant consideration for the privilege to apply.

Having found that Oden is entitled to a qualified privilege, the Court's analysis is not done. "Once a privilege is established, the plaintiff may nonetheless prevail by showing that the defendant acted with malice, such as 'by making unjustified statements, by excessive publication of statements, or by making statements in conflict with the interest which gave rise to the privilege.'" *Buckley*, 827 F. Supp. 2d at 853 (quoting *Delloma*, 996 F.2d at 172); *see also Zdeb v. Baxter Int'l, Inc.*, 297 Ill. App. 3d 622, 632, 697 N.E.2d 425, 431 (1998) ("Where the conduct of the defendant is privileged, the plaintiff bears the burden to plead and prove that the defendant's actions were unjustified or malicious."). "A defendant is entitled to the protection of the privilege of competition provided that the defendant has not employed a wrongful means or is not motivated solely by malice or ill will." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 399 (7th Cir. 2003). A plaintiff can show "actual malice" by establishing that the "defendant had acted with a desire to harm which was unrelated to the interest he was presumably seeking to protect." *Microsoft Corp.*, 2001 WL 58950, at *14 (quoting *Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 708, 554 N.E.2d 1008, 1111–12 (1st Dist. 1990)). If a defendant knows a statement is false, he is unjustified in making it. *Buckley*, 827 F. Supp. 2d at 853.

Ellicson has failed to raise a genuine dispute of material fact that Oden acted without justification or with malice. As previewed above, Ellicson argues that the Letter misrepresents the scope of the Agreement by asserting that Ellicson was subject to a nationwide prohibition from working for any competitor, including NJM, despite language in the Agreement to the contrary. In reading the Agreement, the Court notes that the non-competition provision does not, on its face, have a nationwide application and instead applies only "within those territories which [the employee] has been assigned" in the twelve months prior to the termination of the employee's employment.

Nevertheless, to the extent the Letter misstates the scope of the Agreement, Oden's actions are not automatically deemed unjustified under the law. Courts have found that defendants are not liable for tortious interference based on actions taken to enforce rights in which they hold a mistaken belief that they possess, provided that the mistaken belief is held in good faith. *See, e.g., Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 675 (N.D. Ill. 1998); *Builders Square, Inc. v. Illgross Partners & Co.*, 1995 WL 452985, at *6 (N.D. Ill. July 27, 1995); *Disher*, 514 N.E.2d at 782.

For example, in *Disher v. Fulgoni*, the plaintiff alleged that his former employer tortiously interfered with his prospective economic advantage by sending an unsolicited letter to his prospective employer advising the prospective employer that the plaintiff possessed confidential information and was subject to a confidentiality agreement. 514 N.E.2d at 781. The trial court

invalidated the confidentiality agreement as overly broad and granted summary judgment for the plaintiff on his claim for tortious interference with prospective economic advantage. *Id.* at 768. On appeal, the Illinois appellate court affirmed the finding that the confidentiality agreement was overly broad but reversed the finding on the tortious interference claim. In doing so, the court reasoned that the defendants "had the right to believe that they possessed legitimate interests in [plaintiff's] knowledge of confidential information, despite the subsequent ultimate conclusion by the courts that the confidentiality agreement was overbroad." *Id.* at 781. The court went on to note that the "defendants were entitled to protect any proprietary rights in information that they believed, in good faith, [plaintiff] possessed. Even if their belief was mistaken, defendants were justified in sending the letter to [the prospective employer], together with a copy of the confidentiality agreement, and asserting that they would enforce those rights if need be, without subjecting themselves to the charge of tortious interference with [plaintiff's] prospective economic advantage." *Id.* at 782.

Similarly, in *American Broadcasting Co. v. Maljack Productions*, the British Broadcasting Corporation (BBC) was one of two news agencies that were authorized to film the funeral of Princess Diana. 34 F. Supp. 2d at 669. The BBC agreed to license the live broadcast of the funeral to a number of other news organizations. *Id.* One of those news organizations thereafter granted a video license to the distributor of film and home entertainment that allowed the distributor to sell a home video with footage from the funeral. *Id.* The BBC believed it held a copyright interest in the footage, and there was a dispute as to whether the news organization could properly grant the video license to the distributor. *Id.* at 670. The BBC sent cease-and-desist letters asserting copyright ownership to the news organization and the distributor as well as to other entities with whom the distributor was in discussions to sell the footage. *Id.* at 672–73. The distributor asserted various claims against the BBC as a third-party defendant, including claims for tortious interference with prospective economic advantage as well as for violations of the Lanham Act, based on alleged misrepresentations in the cease-and-desist letters as to the scope of the BBC's copyright ownership. *Id.* at 670.

The court granted summary judgment for the BBC on the tortious interference claim, in part on a finding that the BBC's conduct was privileged because it was acting to protect a recognized interest in its copyright. *Id.* at 675. The distributor argued that the BBC's conduct was not privileged because it did not have a valid copyright in the funeral footage. *Id.* The court rejected this argument, finding that the "BBC's good faith belief in its copyright interest is sufficient to establish privilege." *Id.* As evidence of good faith, the court pointed to the fact that the BBC had a certificate of registration of a copyright and a contract that expressly granted it the copyright in the footage of the funeral. *Id.* The court went on to find that the distributor failed to show that the BBC acted in bad faith because there was "no evidence that BBC's conduct was totally unrelated or antagonistic to the interest which gave rise to BBC's privilege, namely its interest in protecting its copyright." *Id.* at 676. Notably, the court found that a dispute as to whether the BBC exaggerated the scope of its copyright in the cease-and-desist letters precluded summary judgment on the Lanham Act claim. *Id.* at 679–80. The court noted that "[u]nlike the tortious interference claims, BBC's good faith but mistaken belief in its copyright is not a defense to an action under § 43(a) [of the Lanham Act]." *Id.* at 677.

Like the defendants in *Disher* and *Maljack*, Oden was entitled to protect its rights under the Agreement on the good faith belief that Ellicson's employment with NJM would violate it. Here, there is simply no evidence that Oden acted in bad faith. Like the defendant in *Maljack*, Oden has established that it was acting pursuant to an existing Agreement that expressly gave it rights related to Ellicson's ability to compete, and it only asserted its rights after learning that Ellicson had accepted a job with a company it considered a competitor. And nothing in the Letter itself or the surrounding circumstances demonstrates that Oden believed that the Letter was inaccurate or that Oden knowingly advanced a frivolous interpretation of the Agreement.

First, while the use of the term "nationwide" in the Letter may have been imprecise or inartful, there are sections of the Agreement that do not have geographic limitations, such as the prohibitions on solicitation of customers and employees. Second, the Letter also states: "It is our understanding that your responsibilities for NJM Packaging are competitive to the business *in the restricted geography* in which you performed services on behalf of the Company. These actions violate your Agreement and may subject you to damages, in addition to all other available legal and equitable remedies." (emphasis added). This qualifies and clarifies Oden's position on the scope of the non-competition restriction and demonstrates that Oden was acting pursuant to a good faith belief in its rights under the Agreement. *See Disher*, 514 N.E.2d at 781. Third, these statements are an opinion as to the applicability of the Agreement to Ellicson's new employment. The actual agreement was attached to the letter and was available for NJM to review. Opinions cannot establish a tortious interference claim. *See McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 2010 WL 3000178, at *6 (N.D. Ill. July 28, 2010) ("[B]ased on the court's above finding that [the defendant's] representations were not false statements of fact but rather opinions of contract interpretation, [the plaintiff's] tortious interference with a prospective business advantage claim . . . fails."). The Court finds that even if Oden was mistaken as to the scope of the Agreement, and viewing the evidence in the light most favorable to Ellicson, its belief that Ellicson's new employment would violate the Agreement and its interpretation of the Agreement were held in good faith. This is further evidenced by Ellicson's failure to submit any evidence of bad faith, as demonstrated below, and thus fails to create a genuine dispute of material fact.

Ellicson argues that Oden conceded that the non-competition agreement was not enforceable in states where Ellicson had not serviced any clients. This, according to Ellicson, demonstrates that Oden was not justified in telling NJM that Ellicson could not work for NJM on a "nationwide" basis. The only fact from Ellicson's statement of additional material facts to support this argument states:

> During [a conversation with Ellicson's attorney, Jeff Mantyck, the CFO for Oden,] acknowledged that the non-compete agreement was very broad, and the that [sic] concessions Mr. Ellicson was willing to make, including complying with its letter was probably unenforceable anyway to the extent that "assigned states" as listed in Oden's chart included states where Mr. Ellicson was never assigned to serve a client. DRPSOAMF ¶ 14.

Defendant objects that the record evidence cited in support of this fact does not actually support it and is hearsay. The only evidence Ellicson cites in support of this fact is Plaintiff's Exhibit C, which is a March 26, 2022, email thread between Aaron Maduff (Ellicson's attorney) and Jeff

7

Mantyck (Oden's CFO). *See* [118-3]. The Court has reviewed the email thread closely and agrees with Oden that the email does not contain any statement from Mr. Mantyck suggesting that the agreement was "very broad." The objection is sustained as to that part of the fact. As to Mr. Mantyck's acknowledgment that the agreement was probably unenforceable in certain states, the only support for this fact comes from a portion of the email written by Mr. Maduff, not Mr. Mantyck. He writes, "Under the law, the agreement itself is only enforceable to the extent that Oden has a protectable interest. And as you point out, that means that where Adam did not have customers even within the Eastern Territory, the agreement is probably unenforceable." [118-3] at 2. The Court agrees that this evidence is hearsay. Ellicson is offering an email from his attorney that suggests a representative of Oden stated to him that the agreement is probably unenforceable in certain states. He is offering this as evidence that Oden knew the agreement was not enforceable nationwide. Thus, he is offering an out-of-court statement (i.e., an email from his attorney) for the truth of the matter asserted, which cannot be properly considered on a motion for summary judgment. *See, e.g.*, *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 942 (7th Cir. 2012) ("[T]he email indicates that [Defendant] made certain statements, and its only possible use is to show that the [Defendant] did in fact make those statements. The email is inadmissible hearsay, and the district court properly disregarded it on summary judgment."). But even if the email is not hearsay and the Court considers the evidence, it does not suggest that the Letter was sent without legal justification or in bad faith. At most, it demonstrates that Oden conceded after the fact that the Agreement might not be enforceable in certain geographic locations. As Ellicson has offered no other facts or evidence to support this argument, it does not defeat Oden's claim of privilege.

Ellicson also argues that Oden was aware that he would not be selling competing products, so it "had no legitimate concern at all," and its unwillingness to confirm with NJM that he would not be selling competing products is evidence that its motive was other than to protect its rights under the Agreement. Plaintiff has offered no admissible evidence to support the factual underpinnings of this argument. There are no facts presented in either party's Rule 56.1 statements to establish that: 1) Plaintiff would not be selling competing products, 2) Defendant was aware of this, or 3) that Defendant was unwilling to confirm with NJM whether Plaintiff would be selling competing products. To the contrary, the Rule 56.1 statements establish that Defendant viewed NJM as a competitor (PRDSOF ¶ 26), both companies produced liquid filling and packaging equipment and sold liquid filling and packaging lines (PRDSOF ¶ 27), NJM is and was in the same industry as Oden, and the two do and did sell to the same customer base (PRDSOF ¶ 28). Plaintiff's additional statement of material facts does not contradict these facts.

Notably, in his memorandum of law, Ellicson cites only to record evidence (Exhibit C) as support for this argument, and not the Rule 56.1 statements. This alone is sufficient to strike the argument. *Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 666 (N.D. Ill. 2015) ("[I]t is essential to the court's proper consideration of those arguments for the parties to brief their legal and factual positions with reference to the Local Rule 56.1 statements and responses and not to the record materials themselves."). But even if the Court were to consider this evidence, it does not support Ellicson's argument. As stated above, Exhibit C is an email thread between Ellicson's attorney and Mr. Mantyck. It contains *Ellicson's attorney's view* that Ellicson would not be selling competing products, but it does not suggest that Oden came to the same conclusion. In fact, this email thread suggests the opposite – the thread contains an email from Mr. Mantyck wherein he sends Ellicson's attorney "a list of the product lines, services and parts that we consider in

8

competition with what Oden Machinery offers to our customers." There is no email from Mr. Mantyck to suggest he or Oden changed their opinion on the matter. Thus, the argument that Oden was aware that Ellicson would not be selling competing products is conclusory and unsupported by any admissible evidence.

Finally, Ellicson contends that a statement made by Ron Sarto, the CEO of Oden's parent company, during the negotiations shows evidence of malice. According to Ellicson, during a conversation with his attorney, Mr. Sarto "interjected in a loud and combative tone 'Adam is not going to work for NJM.'" DRPSOAF ¶ 15. As support for this fact, Ellicson cites paragraph 14 of the declaration of Mr. Maduff. As stated above, Oden has moved to strike portions of this declaration, including part of paragraph 14. In its memorandum of law, Oden also objects that this statement is hearsay and is contradicted by Mr. Sarto's deposition testimony. The Court need not resolve the issue because even if the Court considers this evidence, it does not raise an inference that Defendant acted with malice.[3] This statement is consistent with Oden's desire to enforce its rights under the Agreement, particularly if it believed Ellicson's employment with NJM violated it. *See Microsoft Corp.*, 2001 WL 58950, at *14 (finding no malice when the defendant's statements "were directly related to their efforts to protect their legal interests"). As such, even viewing this evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendant acted with malice when it sent the Letter based on Mr. Sarto's statement.

In summary, Ellicson has presented no evidence from which a reasonable inference could be drawn that Oden acted maliciously or without justification when sending the Letter, nor has he raised a genuine dispute of material fact on those issues. *See Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1085 (N.D. Ill. 2018) (granting summary judgment when plaintiff failed to establish facts supporting malice). Because Oden is entitled to a qualified privilege for the Letter, it cannot form the basis of a tortious interference with prospective economic advantage claim.[4] The Court grants Defendant's motion for summary judgment.

---

[3] As stated above, Oden moved to strike the two declarations from Ellicson as well as the declaration from Mr. Maduff. Because the Court does not consider the declarations from Ellicson in deciding the motion for summary judgment, and because its consideration of Mr. Maduff's declaration does not change the outcome of this decision, Oden's motion to strike is denied as moot.

[4] Because the Court finds that Oden is entitled to summary judgment on the issue of privilege, the Court does not address the other arguments it raised.

**Conclusion**

   For the reasons stated above, Defendant's motion for summary judgment [111] is granted, and Defendant's motion to strike [121] is denied as moot.  Civil case terminated.

**SO ORDERED.**

Dated:  October 23, 2025

                               Sunil R. Harjani
                               United States District Judge